**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| North County Communications Corp., <br><br> Plaintiff, <br><br> vs. <br><br> McLeodUSA Telecommunications Services, Inc.; *et al.*, <br><br> Defendants. | No. CV-09-2063-PHX-GMS <br><br> **ORDER** |

Pending before the Court is the Motion to Dismiss (Dkt. # 25) filed by Defendants McLeodUSA Telecommunications Services, Inc., Cox Arizona Telcom, LLC, and Electric Lightwave, LLC (Collectively "Defendants"). For the reasons set forth below, the Court dismisses the case without prejudice.

## STATUTORY FRAMEWORK AND BACKGROUND

The Telecommunications Act of 1996, 47 U.S.C. §§ 251 *et seq*. (the "Telecommunications Act" or the "Act"), "created a complex federal scheme to encourage competition in local telephone service markets previously dominated by state-sanctioned local exchange carrier monopolies." *Qwest Corp. v. Ariz. Corp. Comm'n*, 567 F.3d 1109, 1111 (9th Cir. 2009) (citing *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371–72, 377–80 (1999)). To achieve these purposes, the Act requires "former monopoly local carriers," or incumbent local exchange carriers ("ILECs"), "to enter into interconnection agreements that

provide" competitive local exchange carriers ("CLECs") "with access to . . . their telecommunications components on . . . terms favorable to the competitors." *Id.* (referring to 47 U.S.C. §§ 251–252). The Act further gives the Federal Communications Commission ("FCC" or "Commission") regulatory authority over the operations of ILECs and CLECs. *See* 47 U.S.C. § 251. The FCC also has regulatory authority over wireless telecommunication providers, or commercial mobile radio service ("CMRS") carriers.

Under the Act, all local exchange carriers ("LECs"), including CLECs, have a "duty to establish reciprocal compensation agreements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). The Act itself, however, does not specify "the type of arrangement necessary to trigger the payment of reciprocal compensation" or what "applicable compensation regime, if any," applies "when carriers exchange traffic without making prior arrangements with each other." *See In the Matter of Developing a Unified Intercarrier Compensation Regime (T-Mobile)*, 20 F.C.C.R. 4855, 4857, ¶ 4 (2005).

To help clarify these ambiguities, the FCC issued its 2005 decision in *T-Mobile*, 20 F.C.C.R. at 4860, ¶ 9. In *T-Mobile*, the FCC acknowledged that tariffs had previously been a lawful form of reciprocal compensation. *Id.* The Commission, however, rejected state tariffs as a valid form of reciprocal compensation going forward—at least with respect to CMRS carriers who failed to enter into a negotiated compensation agreements with LECs. *See id.* To motivate carriers to enter into negotiated agreements, thus limiting the applicability of state-tariffs, the Commission further extended the Telecommunications Act's compulsory arbitration procedures to allow an aggrieved carrier to compel arbitration against CMRS carriers who refused to negotiate interconnection costs. *Id.* Prior to *T-Mobile*, those arbitration procedures, which are found in § 252 of the Act, had only applied as against ILECs. *See* 47 U.S.C. § 252.

Yet, while *T-Mobile* allows aggrieved carriers to obtain compensation from ILECs and CMRS carriers through arbitration, the FCC's decision does not indicate what action is appropriate where two CLECs exchange intrastate telecommunications without a negotiated agreement and when one CLEC refuses to compensate the other. *See* 20 F.C.C.R. at 4860,

¶ 9. Under the Telecommunications Act and *T-Mobile*, it appears that the negotiation and arbitration procedures are inapplicable to CLECs. *See id*; 47 U.S.C. § 252. Thus, it remains unclear what "applicable compensation regime, if any" applies when two CLECs "exchange traffic without making prior arrangements with each other." *See* 20 F.C.C.R. at 4857, ¶ 4. It also is not entirely clear whether *T-Mobile* prohibits state tariffs as a valid form of reciprocal compensation when two or more CLECs exchange intrastate traffic without a negotiated agreement. *See id* at 4860 ¶ 9.

In this case, Plaintiff North County Communications Corporation ("North County"), a CLEC that provides telecommunications services in various parts of the western United States, brought suit against Defendants, who are also CLECs, to enforce a tariff that North County filed with the Arizona Corporation Commission. (Dkt. # 1.) North County alleges that Defendants refuse to pay reciprocal compensation when North County terminates local intrastate telephone calls originated by Defendants. (*Id*.) Because the parties have not otherwise entered into a specific compensation agreement, North County contends that Defendants should be charged for these services at the tariff rate. (*Id.*) Specifically, North County complains that it is entitled to damages based on five theories: (1) enforcement of a tariff, (2) declaratory relief, (3) quantum meruit, (4) violations of Arizona Revised Statute §§ 40-365, 40-423(A), and (5) unfair competition. (*Id.*) Defendants now move to dismiss these claims, arguing that the Court lacks subject-matter jurisdiction to hear this case. (*Id.*)[1]

## LEGAL STANDARD

A federal court can only reach the merits of a dispute if it has jurisdiction to do so. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). Jurisdiction is limited to subject matter authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge a federal court's jurisdiction to hear the case at any time. *See* Fed.

---

[1] Because this case can be decided on the basis of jurisdiction, the Court need not reach Defendants' alternative argument that North County's claims are preempted by federal law.

R. Civ. P. 12(b)(1), 12(h)(3); *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380–81 (9th Cir. 1988). A defendant's challenge to a court's subject-mater jurisdiction can be facial or factual. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2003). A facial challenge asserts that the complaint, on its face, fails to allege facts that would invoke federal jurisdiction. *Id.* A factual attack, on the other hand, disputes the veracity of allegations in the complaint that would, if true, invoke federal jurisdiction. *Id.*

In resolving a motion under Rule 12(b)(1), the Court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits the case." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *see Greene v. United States*, 207 F. Supp.2d 1113, 1119 (E.D. Cal. 2002) (citation omitted). "The court may view evidence outside the record, and no presumptive truthfulness is due to the complaint's allegations that bear on the subject matter [jurisdiction] of the court." *Greene*, 207 F. Supp.2d at 1119 (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). And while lack of subject matter jurisdiction is an affirmative defense, "[t]he party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citation omitted); *see In re Ford Motor Co./Citibank*, 264 F.3d 952, 957 (9th Cir. 2001); *Fenton v. Freedman*, 748 F.2d 1358, 1359, n.1 (9th Cir. 1994).

## DISCUSSION

This Court lacks both federal question and diversity jurisdiction over North County's claims. Further, under the doctrine of primary jurisdiction, the Court dismisses this case to allow North County to pursue relief from the Arizona Corporation Commission.

**I.     Federal Question Jurisdiction**

North County asserts that federal question jurisdiction is appropriate under Sections 201(b), 206, and 207 of Telecommunications Act. (Dkt. # 1.) The Ninth Circuit's recent decision in *North County Commc'ns, Corp. v Cal. Catalog & Tech*, 594 F.3d 1149 (9th Cir. 2010), however, states otherwise. In *Cal. Catalog*, the Ninth Circuit rejected efforts by North County to enforce a state tariff against both CMRS providers and CLECs. *Id.* at 1153.

(observing that defendants include "CMRS and CLEC providers that offer calling plans allowing calls to areas serviced by North County") (brackets and internal quotation marks omitted). In dismissing North County's claims, the court held that it lacked jurisdiction because North County failed to point to any specific provision of the Act creating an express or implied private right of action for violations of the Act's compensation requirements. *Id.* at 1155 (citing *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008) ("Where a federal statute does not explicitly create a private right of action, a plaintiff can maintain a suit only if Congress intended to provide the plaintiff with an implied private right of action.")). And while the Ninth Circuit's analysis focused heavily on North County's claims against CMRS providers, the court dismissed North County's against both CMRS carriers and CLECs. *See id.* at 1161. Following the necessary logic of *Cal. Catalog*, the Court in this case holds that 47 U.S.C. §§ 201(b), 206, and 207 do not confer federal question jurisdiction over a CLEC's claims for compensation against other CLECs for the termination of intrastate telephone calls.

### A. 47 U.S.C. § 201(b)

Under § 201(b) of the Act, "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]" The Ninth Circuit held in *Cal. Catalog*, 594 F.3d at 1158, that this language does not create a private right of action. "[G]iven the given the broad language of the statute, a more reasonable interpretation is that it is within the Commission's purview to determine whether a particular practice constitutes a violation for which there is a private right to compensation." *Id.* (citing *In re Long Distance Telecomm. Litig.*, 831 F.2d 627, 631 (6th Cir. 1987)). The court explained:

> [T]the Commission has not determined that the CMRS providers' lack of payment to CLECs like North County violates § 201(b). North County essentially requests that the federal courts fill in the analytical gap stemming from the absence of a Commission determination regarding § 201(b). This we decline to do. The district court properly dismissed North County's declaratory judgment claim premised on § 201(b), because entry

- 5 -

> of a declaratory judgment would . . . put interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission.

*Id.* (quotations and footnote omitted); *see also Global Crossing Telecomms, Inc. v. Metrophones Telecomms, Inc.*, 550 U.S. 45, 52–53 (2007) (observing that the Act generally does not create a private right of action unless the Commission states otherwise).

North County does not point to any FCC determination authorizing a private right of action under § 201(b) against a CLEC who fails to enter a reciprocal compensation agreement and refuses to pay for termination costs of intrastate calls. Because "an FCC determination is integral to claims involving § 201(b)[,]" the absence of a determination by the Commission is detrimental to North County's assertion of jurisdiction. *See Cal. Catalog*, 594 F.3d at 1158.

### B. 47 U.S.C. §§ 206 & 207

The Ninth Circuit has also rejected §§ 206 and 207 as jurisdictional bases for the types of claims alleged by North County. *See Cal Catalog*, 594 F.3d at 1160. Under § 206 of the Act, a "common carrier shall be liable" for "damages sustained in consequence of any . . . violation of the provisions of this chapter." 47 U.S.C. § 206. Section 207 provides that a person "damaged by any common carrier . . . may make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction." *Id.* at § 207. These Sections, therefore, establish procedures for private parties to pursue claims in federal court. *See id.* at §§ 206, 207. They do not, however, establish an independent private right of action for compensation as North County alleges here. *See Cal Catalog*, 594 F.3d at 1160. In *Cal Catalog*, the Ninth Circuit reiterated that "'there must be an independent right to compensation for a private right of action to lie under §§ 206 and 207.'" *Id.* (quoting *Greene*, 340 F.3d at 1050–51.) "[B]ecause North County has failed to establish a right to specific compensation pursuant to any statute or regulation, §§ 206 and 207 cannot form the basis for its compensation claims." *See id.*; *see*

*also W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1204 (9th Cir. 2008) ("[I]ssues regarding the applicability of § 207 are complex and should not be decided without the participation of the FCC, the agency principally responsible for the enforcement of the Telecommunications Act.").

North County's claim for declaratory relief pursuant to 28 U.S.C. § 2201 does not alter this analysis. "[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction[.]" *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005). Instead, the Declaratory Judgment Act merely expands the remedies available in cases where an independent basis for jurisdiction exists." *See id.* at 1161–62. Because North County fails to identify a specific provision under the Telecommunications Act conferring a private right of action, *see California v. Oroville-Wyandotte Irrigation Dist.*, 409 F.2d 532, 535 (9th Cir. 1969), federal question jurisdiction necessarily fails despite North County's invocation of 28 U.S.C. § 2201. Similarly, to the extent that Defendants assert the Telecommunications Act as a defense to North County's claims, it is well established that an affirmative defense that arises under federal law does not create federal subject matter jurisdiction. *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).[2]

## II. Diversity Jurisdiction

North County has also failed to adequately establish diversity jurisdiction. Under 28 U.S.C. § 1332, federal courts have diversity jurisdiction over cases between citizens of different states involving claims greater than $75,000. 28 U.S.C. § 1332(a)(1). The party invoking federal jurisdiction bears the burden of establishing the elements of jurisdiction, including the amount in controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S.

---

[2] In its Complaint, North County also alleges that Defendants have a duty, pursuant to 47 U.S.C. § 251(b)(5), to compensate North County for completing their calls (Dkt. # 1.) Yet, to the extent that the Complaint alleges that Defendants breached this duty, North County does not assert § 251(b)(5) as a basis for federal jurisdiction. (*See id.*) Moreover, in rejecting this provision as a basis for jurisdiction, the Ninth Circuit in *Cal. Catalog* noted that "nothing in the plain language of § 251(b)(5) provides for a right of compensation." 594 F.3d at 1156.

555, 561 (1992). Generally the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, but if jurisdiction is challenged as a factual matter by either the court or the opposing party, the party invoking the jurisdiction bears the burden of supporting its jurisdictional allegations by "competent proof." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

"Competent proof" in this context requires the party invoking jurisdiction to show that "it does not appear to a legal certainty that her claim is for less" than the requisite jurisdictional amount. *United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 682 (9th Cir. 1976) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)); *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996) (quotation omitted). When there are two or more defendants in a diversity case, a "plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant." *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001); *see Libby, McNeill, and Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir. 1987) (refusing to aggregate plaintiff's individual claims against multiple defendants to reach the amount in controversy requirement where those claims did not allow for joint liability).

North County has not met its burden of supporting its jurisdictional allegations by "competent proof." *See McNutt*, 298 U.S. at 189. Though North County asserts in its Complaint that the amount in controversy exceeds $75,000 (*See* Dkt. # 1.), the Complaint does not assert that the amount exceeds $75,000 as to each individual defendant or that Defendants are jointly liable for their alleged violations of state law. *See Middle Tenn. News Co.*, 250 F.3d at 1081. And while North County's Response to the Motion to Dismiss alleges that each Defendant is liable for more than $75,000, mere allegations are insufficient to carry the burden of proving the requisite jurisdictional amount when that amount is challenged by the opposing party. Instead, North County must satisfy its burden of showing that "it does

1  not appear to a legal certainty that [its] claim is for less" than the required amount. *See S.*
2  *Pac. Transp. Co.*, 543 F.2d at 682.

### III. Primary Jurisdiction

Even if subject-mater jurisdiction were appropriate in this case, the doctrine of primary jurisdiction counsels in favor of dismissing North County's claims. *See Cal. Catalog*, 594 F.3d at 1162 n. 13 (addressing primary jurisdiction *sua sponte*, even though the court had already dismissed the case for lack of jurisdiction). "'The primary jurisdiction doctrine is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'" *Id.* (quoting *W. Radio Servs.*, 530 F.3d at 1200). The purpose of the doctrine is "'to protect agencies possessing quasi-legislative powers and that are actively involved in the administration of regulatory statutes.'" *Id.* (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir.2008)). Under the doctrine, both federal and state courts have the power to "'stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.'" *Id.* (quoting *Clark*, 523 F.3d at 1114); *see also Coconino County v. Antco, Inc.*, 214 Ariz. 82, 87, 148 P.3d 1155, 1160 (Ct. App. 2006) (holding that the doctrine of primary jurisdiction applies with respect to "specialized areas where agency expertise may be useful").

The question of whether North County is entitled to compensation from Defendants "is within the special competence of an administrative agency." *See Cal. Catalog*, 594 F.3d at 1162. Given that the Court is unaware of, and North County does not cite, any agency determination discussing to the amount of compensation to be paid when a CLEC fails to pay another carrier for the exchange of interstate traffic, this question is best resolved in the first instance by the appropriate administrative tribunal. *See id.* (declining to rule on North County's compensation claim in the first instance). In a similar context, the FCC explicitly declined to address these types of questions, holding that the state utility commission was the proper authority to determine what compensation was owed where carriers exchanged intrastate telecommunications in the absence of a negotiated agreement. *See North County*

*Comm'cns Corp. v. MetroPCS Cal., LLC*, 24 F.C.C.R. 3807, 3819, ¶ 9 (2009). In *MetroPCS*, the FCC refused to determine the amount of compensation owed to North County for intrastate calls exchanged between North County and a CMRS carrier. *Id.* Instead, the FCC directed North County to pursue its claims with the state utilities commission. *Id.* ("[T]he more appropriate venue for determining what constitutes reasonable compensation for North County's termination of intrastate traffic originated by MetroPCS is not this Commission, but rather the California PUC, via whatever procedural mechanism it deems appropriate under state law (e.g., complaint proceeding, declaratory ruling proceeding, generic cost or rulemaking proceeding)."). Similarly, in *Iowa Network Servs., Inc. v. Qwest Corp*, 466 F.3d 1091, 1098 (8th Cir. 2006), the Eight Circuit articulated the appropriate approach in cases where the Commission has not addressed an issue regarding compensation for the transport and termination of intrastate telecommunications services:

> In the absence of a clear mandate from the FCC or Congress stating how charges for this type of traffic should be determined, or what type of arrangement between carriers should exist, the Act has left it to the state commissions to make the decision, as long as it does not violate federal law and until the FCC rules otherwise.

*Id.* (citing *Global NAPs, Inc. v. Mass. Dep't of Telecomms. & Energy*, 427 F.3d 34, 46–47 (1st Cir. 2005)). In the instant case involving termination of intrastate traffic between CLECs, the amount of compensation, if any, owed to North County appears to be within the special competence of the Arizona Corporation Commission. The Court therefore dismisses North County's claims without prejudice to allow North County to pursue its claims in the proper forum. *See Cal. Catalog*, 594 F.3d at 1162 (dismissing North County's claims against CMRS carriers and CLECs so that North County could pursue those claims before the appropriate state commission).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 25) is **GRANTED** without prejudice.

/ / /

**IT IS FURTHER ORDERED THAT** the Clerk of Court is directed to **TERMINATE** this action.

DATED this 30th day of April, 2010.

*/s/ H. Murray Snow*
G. Murray Snow
United States District Judge